IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL UNION,  )  | | |
| UNITED AUTOMOBILE,  ) | | |
| AEROSPACE AND AGRICULTURAL  ) | | |
| IMPLEMENT WORKERS OF AMERICA,  ) | | |
| and its LOCAL 1070, UAW,  ) | | |
|  )  | | |
| Plaintiffs,  ) | Case No. 3:14-CV-5035-MDH | |
|  ) | | |
| v.  ) | | |
|  ) | | |
| DALLAS AIRMOTIVE, INC. d/b/a  ) | | |
| PREMIER TURBINES,  ) | | |
|  ) | | |
| Defendant.  ) | | |

## ORDER

Before the Court is Plaintiffs' Complaint to Compel Arbitration (Doc. 1) and Plaintiffs' Motion for Judgment on Stipulated Facts (Doc. 28). Plaintiffs request that the Court enter an order pursuant to Section 301 of the Labor Management Relations Act that compels Defendant to attend arbitration as required under the parties' collective bargaining agreement. Plaintiffs further request an award of attorneys' fees. Upon the parties' joint request, the Court ordered that the above-captioned matter be decided solely upon stipulated facts and briefing. (Doc. 26). The parties submitted stipulated facts (Doc. 27) and filed primary and responsive briefs concerning the issues presented (Docs. 28-32). The matter is now ripe for review.

## BACKGROUND

### Stipulated Facts

The stipulated facts are as follows. Plaintiffs are labor organizations that act as the exclusive bargaining representative for non-exempt hourly employees at Premier Turbines in

Neosho, Missouri. At all times relevant to the present action, Defendant conducted business and employed employees under the name Premier Turbines in Neosho, Missouri. Plaintiffs and Defendant entered into a collective bargaining agreement effective May 15, 2010 through May 14, 2013 ("CBA").

Cheryl Bond was employed by Defendant in the position of "Inventory Control." During Ms. Bond's employment with Defendant, she was a member of the bargaining unit represented by Plaintiffs. The terms and conditions of her employment were governed by the various bargaining agreements executed between Plaintiffs and Defendant. On or about September 15, 2010, Ms. Bond began receiving Short Term Disability benefits under the CBA and Defendant's Short Term Disability Plan due to a qualifying disability caused by chronic back pain. Ms. Bond received Short Term Disability benefits until she exhausted those benefits. On or about March 2, 2011, Ms. Bond applied for and was approved Long Term Disability benefits. By letter dated October 19, 2012, Ms. Bond was notified that her Long Term Disability benefits would be discontinued effective March 14, 2013. Ms. Bond appealed the decision to terminate her Long Term Disability benefits through Cigna Group Insurance under Defendant's Long Term Disability Plan. Cigna ultimately upheld its decision to terminate Ms. Bond's Long Term Disability benefits.

On March 12, 2013, Plaintiff UAW Local 1070 filed a grievance against Defendant regarding the termination of Ms. Bond's Long Term Disability benefits. The grievance alleges that Defendant violated Article 17, Section 6 of the CBA and argues that "[t]he Company is not fulfilling the agreement by discontinuing Long Term Disability payments to disabled employees on disability leave." The grievance requests that Defendant "resume payments and all be made whole." Defendant denied the grievance and the parties were unable to settle the matter prior to

2

Step 4 of the CBA's grievance procedure. Pursuant to Step 4, Plaintiffs demanded final and binding arbitration of the grievance.

On January 6, 2014, three days before the arbitration was scheduled to take place, Defendant cancelled the arbitration. Defendant cited its prior correspondence with Plaintiffs and noted "the Company's ongoing position" that Ms. Bond's grievance "is not appropriately brought to arbitration" because "the issue regarding whether she is disabled pursuant to the terms of the LTD Plan and otherwise entitled to LTD benefits is subject to the Plan and its appeal process." Defendant reported that the pending arbitration was inappropriate because "the issue being disputed is not procedurally arbitrable" and "the employer believes the threshold issue of arbitrability should be decided by a federal court before there might be any consideration of the substantive issues." Defendant continues to take the position that Ms. Bond's grievance is not properly arbitrable under the law.

**Relevant CBA Provisions**

ARTICLE 10: GRIEVANCE AND ARBITRATION PROCEDURE

    Section 1. Grievance Defined

        For purposes of this Agreement, a grievance is defined as any dispute, claim or complaint involving the interpretation or application of the provisions of this Agreement, and taken up in the grievance procedure outlined below. Said grievance also includes any claim under state substantive law or federal law, including but limited to . . . claims made pursuant to the Employee Retirement Income Security Act and its amendments . . . . All such grievances or claims shall be settled and determined exclusively by the grievance procedure.

    Section 2. Grievance Procedure

    Step 4.
        a.) Arbitration – Grievances Subject to Arbitration – any grievance which has not been settled at Step 3, may be appealed to arbitration by the Union by serving written notice of intent to appeal to arbitration upon the Employer within thirty (30) calendar days after receipt of the Human Resources Department's answer.

3

b.) . . .

c.) Submission to Arbitrator – . . . The arbitrator shall have authority to consider only grievances presenting solely an arbitrable issue under this Agreement. Decision on the issue or issues to be heard or the arbitrability shall be made by the arbitrator before either party may proceed with the merits of the case. . . .

d.) Jurisdiction of the Arbitrator – The jurisdiction of the arbitrator and his decision shall be confined to a determination of the facts and the interpretation or application of the specific provision or provisions of the Agreement at issue. The arbitrator shall have no authority to add to, subtract from, modify, or amend any provision of this Agreement.

. . .

ARTICLE 17 GROUP INSURANCE

Section 1. The Company will provide group insurance coverage for Medical, Dental, Vision, Prescriptions, Life and Accidental Death and Dismemberment, Short-Term Disability and Long-Term Disability.

[. . .]

Section 6. Long-Term Disability. Long Term Disability benefits replace a portion of your pay if you are unable to work because of illness or injury that make you unable to work after you have exhausted short-term disability. Effective 6/18/07, long-term disability will begin on the 181st day of your approved disability, and will pay 66 2/3% of your base wages until you are no longer disabled or age 65, whichever occurs first. Long-term disability benefits are reduced by other amounts of income you may receive from Worker's Compensation or Social Security.

## Parties' Arguments

Defendant argues that it should not be compelled to arbitrate the grievance brought on behalf of Ms. Bond because the dispute at issue falls outside the scope of the CBA's arbitration provision. Defendant cites the language in the arbitration agreement that provides: "The arbitrator shall have authority to consider only grievances presenting solely an arbitrable issue under this Agreement." Under the CBA's Grievance and Arbitration Procedure, "a grievance is defined as any dispute, claim or complaint involving the interpretation or application of the provisions of this Agreement." Defendant argues that the dispute at issue concerns whether Ms. Bond was "disabled" and entitled to benefits under the Group Insurance Disability Plan (the

4

"Plan"). Defendant asserts that such a determination is made by the Insurance Company under the Plan and the Plan alone provides the internal review and appeal processes for disability benefit claims that are denied. Thus, Defendant does not believe that the dispute at issue is arbitrable because it does not involve the "interpretation or application" of the CBA. While Defendant acknowledges the strong presumption in favor of arbitrability where a CBA includes a broad arbitration clause, Defendant concludes that the Plan Administrator's findings at issue here are not subject to review in arbitration "[b]ecause the benefits sought in this case are neither created nor meaningfully incorporated into the CBA or subject to the CBA's Grievance and Arbitration Procedure[.]"

Plaintiffs argue, conversely, that the Court should compel Defendant to attend arbitration because the issue of arbitrability is not for the Court to decide. Plaintiffs assert that the arbitrator, rather than the court, should decide whether the dispute falls within the scope of the CBA's arbitration provision. While Plaintiffs acknowledge that issues of substantive arbitrability are typically reserved for judicial determination, Plaintiffs nonetheless argue that the language used in the grievance and arbitration provisions of the CBE evidences a "clear and unambiguous" agreement that the parties intended to arbitrate issues of substantive arbitrability. Specifically, Plaintiffs cite Article 10, Section 2 of the CBA that states: "Decision on the issue or issues to be heard *or the arbitrability* shall be made *by the arbitrator* before either party may proceed with the merits of the case." (emphasis added). Accordingly, Plaintiffs ask the Court to compel arbitration of Ms. Bond's grievance in order to allow the arbitrator to determine whether the dispute is arbitrable and, if so, to assess the merits of the dispute.

**DISCUSSION**

District courts typically address three types of issues in litigation arising from arbitration

5

agreements – (1) disagreements concerning the merits of the dispute, (2) disagreements about "arbitrability" or whether the parties agreed to arbitrate the dispute, and (3) disagreements about who decides arbitrability.  *See generally First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  A reviewing court should address these issues in reverse order because the third issue dictates who decides the second, and the second issue dictates who decides the first.  *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 326 (2d Cir. 2013).  Here, Plaintiffs' arguments surround the third issue.  Accordingly, the Court will first address the question of "who decides" arbitrability.

Arbitrability asks "whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance."  *See AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  Typically, the issue of arbitrability is to be decided by the court rather than the arbitrator.  *Id.*  However, "like any other disputed issue, even the gateway question of arbitrability can be given to an arbitrator, if the parties so choose."  *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014).  "[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."  *First Options of Chicago, Inc.*, 514 U.S. at 943 (internal citations omitted).  While there is a presumption that substantive arbitrability is for the court to decide, the parties can rebut that presumption if they "clearly and unmistakably provide otherwise[.]"  *AT & T Technologies, Inc.*, 475 U.S. at 649; *see also Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623, 625 (8th Cir. 2006).  "[T]he party contending that an arbitrator has authority to decide arbitrability bears the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question."  *Houston Ref., L.P.*, 765 F.3d at 408.

Here, Plaintiffs argue that the language in Article 10, Section 2 of the CBA provides clear

6

and unmistakable evidence that the parties agreed to submit questions of arbitrability to the arbitrator. That section states: "The arbitrator shall have authority to consider only grievances presenting solely an arbitrable issue under this Agreement. Decision on the issue or issues to be heard or the arbitrability shall be made by the arbitrator before either party may proceed with the merits of the case." The Court agrees with Plaintiff and finds that the language in the parties' arbitration agreement demonstrates clearly and unmistakably that the parties agreed to have the arbitrator decide the threshold question of arbitrability. The language in the parties' CBA closely resembles the language used in other CBA's that appellate courts have held "clearly and unmistakably" evince intent to arbitrate issues of arbitrability. *See In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255-56 (11th Cir. 2012) ("Any issue regarding whether a particular dispute or controversy is ... subject to arbitration will be decided by the arbitrator."); *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012) (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330-31 (4th Cir. 1999)) ("Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect."); *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) ("Any dispute regarding whether a particular controversy is subject to arbitration ... shall be decided by the arbitrator(s)."); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877-78 (8th Cir. 2009) (incorporating Rule 7(a) of the AAA Rules into the CBA is sufficient, which expressly gives the arbitrator "the power to rule on his or her own jurisdiction."); *Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623, 625-26 (8th Cir. 2006) (agreement to have the arbitrator resolve "[a]ny controversy concerning whether an issue is arbitrable").

Defendant argues that the language cited by Plaintiffs does not clearly and unmistakably

show that questions of arbitrability *must* be decided by the arbitrator and *cannot* be decided by the court. Defendant states that, at most, the cited language applies when a grievance is filed in arbitration and the parties voluntarily submit the issue of arbitrability to the arbitrator. Defendant notes that "the only mandatory language in the referenced sentence, the word "shall," clearly relates to the *sequence* in which the arbitrator must decide the issues before him[.]" The Court disagrees with Defendant's reading of the arbitration clause. Contrary to Defendant's view, the word "shall" relates to both the "when" and the "who" decides arbitrability. The Court refuses to exclude the phrase "by the arbitrator" in reading the provision, as suggested by Defendant.[1] Furthermore, when the sentence at issue is read in conjunction with the sentence immediately preceding it, which states the arbitrator has "authority" to determine only arbitrable issues, it is apparent that the parties intended the arbitrator to have the "authority" to determine arbitrability. The fact that the provision does not state "sole authority" is immaterial.

Because the parties' CBA clearly and unmistakably reserves questions of arbitrability for the arbitrator, the Court cannot assess Defendant's argument concerning that matter – i.e. whether the disability determination in Ms. Bond's grievance falls outside the scope of the CBA's arbitration agreement. Instead, Defendant is compelled to attend arbitration pursuant to Step 4 of the CBA's Grievance and Arbitration Procedure. There, the arbitrator will determine whether the grievance presents an arbitrable issue.

Finally, the Court denies Plaintiff's request for attorneys' fees. While attorneys' fees are recoverable in actions brought under Section 301 of the Labor Management Relations Act, such

---

[1] Defendant would have the Court read the relevant language to say "decisions on the arbitrability shall be made before either party may proceed with the merits of the case"; however, the express language in the CBA provides that "decisions on . . . the arbitrability shall be made *by the arbitrator* before either party may proceed with the merits of the case." (emphasis added).

8

fees are only recoverable where the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Fed'n of Musicians, Local 2-197, AFL-CIO v. St. Louis Symphony Soc.*, 203 F.3d 1079, 1081 (8th Cir. 2000). Plaintiff claims that the position taken by Defendant "is not supported by the language in the Agreement or the law" and therefore, Defendant's refusal to submit to arbitration was in bad faith. The Court agrees that Defendant's position was not supported by the language of the parties' agreement and the law. However, because courts are typically charged with assessing substantive arbitrability, and because Defendant had a good faith dispute concerning the language in the parties' CBA, the Court cannot find that Defendant "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" such that an award of attorneys' fees is appropriate.

## CONCLUSION

Accordingly, the Court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Judgment on Stipulated Facts (Doc. 28). The Court **GRANTS** Plaintiffs' motion insofar as it requests the Court to compel Defendant to attend arbitration. The Court **DENIES** Plaintiffs' motion insofar as it seeks an award of attorneys' fees. Defendant is hereby compelled, pursuant to the Court's authority under Section 301 of the Labor Management Relations Act, to attend arbitration as provided in the parties' CBA.

**IT IS SO ORDERED:**

Dated: January 15, 2015

                                             */s/ Douglas Harpool*
                                             **DOUGLAS HARPOOL**
                                             **UNITED STATES DISTRICT JUDGE**